# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

SCHOLLE IPN PACKAGING, INC., and )
LIBERTY SURPLUS INSURANCE )
CORPORATION, as Subrogee of )
Scholle IPN Packaging, Inc., )
)                     1:18 C 1883
      Plaintiff, )                     Hon. Marvin E. Aspen
)
          v. )
)
VALFILM, LLC, )
)
      Defendant. )

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

In February 2016, Plaintiff Scholle IPN Packaging, Inc. ("Scholle") entered into an

agreement with Defendant Valfilm, LLC ("Valfilm") to purchase plastic film. (Pls.' Statement

of Material Facts ("Pls.' Facts") (Dkt. No. 21–1) ¶ 10; Answer (Dkt. No. 14) ¶ 10.) The film was

used by Scholle to manufacture plastic bags that were sold to Coca-Cola Company ("Coke") to

hold soft drink syrup. (Pls.' Facts ¶¶ 8–10, 37.) The bags sold to Coke eventually began to leak.

(*Id.* ¶¶ 37.) Scholle investigated the cause of the leaking and concluded that it was caused by

out-of-specification film received from Valfilm. (*Id.* ¶¶ 37–42.) Scholle paid Coke $1.51

million to cover losses allegedly caused by the leaking bags. (*Id.* ¶ 52.) To recover this payment

and other losses, Scholle and its insurer, Liberty Surplus Insurance Corporation ("Liberty")

(collectively "Plaintiffs"), sued Valfilm for breach of contract, breach of express warranty,

breach of implied warranties of merchantability and fitness for a particular purpose, breach of

indemnity, negligence, and strict liability.[1]  (Compl. (Dkt. No. 1).)  Presently before us is

Plaintiffs' motion for summary judgment on all counts (Dkt. No. 21) and Valfilm's cross-motion

for summary judgment that seeks to dismiss a large portion of Plaintiffs' claimed damages.

(Dkt. No. 22.)  For the reasons set forth below, we grant in part and deny in part Plaintiffs' and

Valfilm's motions.

## BACKGROUND

Scholle manufactures plastic packaging and sealing products including plastic bags,

pouches, and spouts.  (Pls.' Facts ¶ 8; Dep. of David Bellmore ("Bellmore Dep.")

(Dkt. No. 28–4) at 4).)  Scholle also manufactures five-gallon plastic bags for Coke that it uses to

package soft drink syrup.  (Pls.' Facts ¶¶ 8–9.)  The bags are constructed of four main

components: an inner and outer layer (i.e., plies) of plastic film, a spout, and a "dip strip" that

helps extract liquid from the bags.  (Bellmore Dep. at 13.)  In February 2016, Scholl contracted

with Valfilm to purchase film for use as the inner ply component of bags for Coke.

(Pls.' Facts ¶¶ 10–11; Purchase Order Agreement ("Contract") (Dkt. 21–4) at 2–3; Answer ¶ 10;

Bellmore Dep. at 13.)

## I.    FILM SPECIFICATIONS AND TESTING

The contract required Valfilm to manufacture the film to certain specifications.

(Pls.' Facts ¶¶ 12–13; Raw Material Specifications ("Specs.") (Dkt. No. 21–6).)  One

specification was that the film was not to be "corona treated."  (Pls.' Facts ¶ 13; Specs. at 2.)

---

[1] Liberty brings its claim as a subrogee of Scholle.  "Subrogation simply means substitution of
one person for another; that is, one person is allowed to stand in the shoes of another and assert
that person's rights against the defendant."  *Trogub v. Robinson*, 366 Ill. App. 3d 838, 842,
853 N.E.2d 59, 63 (1st Dist. 2006) (citation omitted).  Subrogation is often used in the insurance
context and allows an insurer to bring a claim against the party who caused the loss the insurer
was made responsible for.  *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Easterling*,
2014 IL App (1st) 133225, ¶ 21, 19 N.E.3d 156, 162 (1st Dist. 2014).

Corona treatment is a process that changes the surface properties of plastic films, making it easier to print text or images onto the film. (*See* Bellmore Dep. at 15.) Contrary to specifications, Valfilm corona treated one side of the film. (Pls.' Facts ¶¶ 19–22, 25–26; Def.'s Answer to Pls.' Req.'s for Ad. ("Def.'s Answer to Req.'s") (Dkt. No. 21–5) ¶¶ 4–6.)

The contract also included an "Inspection and Acceptance" provision. (Contract at 3, § 10.) That provision states:

> Inspection and Acceptance. All goods ordered [under the contract] shall be subject to inspection and test by [Scholle] to the extent practicable at all times and places, including the place of manufacture and in any event prior to acceptance.

(*Id.*) Scholle did not test the film it received to determine if it was corona treated. (Def.'s Statement of Additional facts ("Def.'s Add. Facts") (Dkt. No. 28) ¶ 11; Bellmore Dep. at 62.) Scholle did, however, test the bags it ultimately manufactured for Coke to make sure they met Coke's specifications. (Def.'s Add. Facts ¶¶ 16–18; Bellmore Dep. at 7–9, 17–19.) These tests did not reveal any issues with the bags or their seals. (Bellmore Dep. at 18.)

## II.     BAG LEAKAGE AND SCHOLLE'S INVESTIGATION

After Scholle delivered numerous bags to Coke, it was notified that the bags were leaking soft drink syrup. (Pls.' Facts ¶ 37.) Scholle investigated and found that the leaking was caused by the corona treated film it received from Valfilm. (Pls.' Facts ¶¶ 39–42; Bellmore Dep. at 16; Global Materials Sci. Lab Report ("Lab Report") (Dkt. No. 21–19) at 4.) Scholle's conclusion was based, in part, on testing seals manufactured with both corona and non-corona treated film. (Lab Report at 3–4; Bellmore Dep. at 22.) The tests revealed that seals made with corona treated film were significantly weaker than seals made with non-corona treated film and would eventually leak. (Lab Report at 3–4.)

## III.     COKE'S AND SCHOLLE'S CLAIMED DAMAGES

Coke eventually made a claim to Scholle for $1,511,522 for damages allegedly caused by the leaking bags.  (Pls.' Facts ¶¶ 38, 52.)  Scholle's insurer, Liberty, retained RGL Forensics ("RGL") to verify the damages alleged by Coke.  (Def.'s Statement of Facts ("Def.'s Facts") (Dkt. No. 22–1) ¶ 10.)  Robbye Mohn, a forensic accountant, from RGL investigated and analyzed Coke's claimed damages.  (*Id.*; Mohn Damages Report ("Pls.' Damages Report" (Dkt. No. 36–4) at 8.)  Mohn concluded that $503,833 of Coke's claimed damages were not supported meaning they were not substantiated by reliable underlying documentation. (Pls.' Damages Report at 13, 21, 29.)  Nonetheless, Scholle paid Coke the full amount it was claiming.  (Pls.' Facts ¶ 52; *see also* (Dkt. No. 36–6) (copy of the check made out to Coke.) Mohn was later retained by Plaintiffs to serve as a damages expert.  (Pls.' Damages Report at 10; Dep. of Robbye Mohn ("Mohn Dep.") (Dkt. No. 28–6) at 2.)

One category of Coke's claim that Mohn concluded was supported was damages for "finished product destroyed."  (Pls.' Damages Report at 22.)  Finished product destroyed represents the alleged loss of syrup-filled bags packaged in cardboard boxes ("bag-in-box"). (*Id.* at 12, 22–23.)  Mohn relied on two main pieces of evidence to verify these damages: a bill of materials ("BOM") from Coke that lists the claimed cost of each bag-in-box component totaling $9.65,[2] and various invoices demonstrating that 68,897 bag-in-boxes were destroyed. (*Id.* at 22–24; Mohn Dep. at 17–19; *see also* BOM at 94.)  Based on this evidence, Mohn concluded that Coke's damages for finished product destroyed totaled $664,856. (Damages Report at 22–24.)  Valfilm retained its own damages expert, Joel Chenevey, who

---

[2] The BMO lists the cost of the following components: syrup ingredients, box packaging, bag packaging, and label packaging.  (BOM (Dkt. No. 22–6) at 94.)

disagreed with Mohn and concluded that none of Coke's finished product destroyed damages were supported. (Dep. of Joel Chenevey ("Chenevey Dep.") (Dkt. No. 36–7) at 3, 12–13.)

Scholle also claims that it suffered $253,832 in direct damages. (Pls.' Damages Report at 13.) Mohn opined that $237,964 of this amount was supported (*Id.* at 17, 29) while Chenevey testified that $252,183 was supported. (Chenevey Dep. at 11–12.)

## IV.  DAMAGES PROVISIONS IN THE CONTRACT

Three contract provisions reference Valfilm's potential damages responsibilities. First, the contract includes an indemnity provision that states:

> [Valfilm] agrees to indemnify and hold harmless [Scholle] from and against all losses, liabilities, claims or demands, including attorneys' fees and costs, for injuries to any person (including death) or damage to property, directly or indirectly arising out of [Valfilm's] performance hereunder, or its acts or omissions, regardless of when such losses occur and regardless of whether such articles or services have been accepted.

(Contract at 3, § 12). The contract also includes a damages clause within the warranty provision. It states:

> [Valfilm] agrees to save and keep [Scholle] and its customers free and harmless from any loss, damage, injury, or expense whatsoever in connection with this Purchase Order including, without limitation, all claims whether in warranty, negligence, product liability or otherwise, consequential and incidental damages, and attorneys' fees.

(*Id.* § 9.) Finally, the specifications also include a damages provision:

> If a change is made [to specifications] without Scholle approval, [Valfilm] agrees to reimburse Scholle for 100% of the resulting out-of specification film, as well as 100% of all empty and filled bags made with this out-of specification film, and 100% of all other quality issue expenses associated with it.

(Specs. at 6.)

## STANDARD OF REVIEW

Summary judgment is proper only when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A

genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). This standard places the initial burden on the moving party to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations omitted). Once the moving party meets this burden of production, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading" but rather "must set forth specific facts showing that there is a genuine issue [of material fact] for trial." Fed. R. Civ. P. 56(e). In deciding whether summary judgment is appropriate, we must accept the nonmoving party's evidence as true, and draw all reasonable inferences in that party's favor. *See Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513. "On cross-motions for summary judgment, the Court assesses whether each movant has satisfied the requirements of Rule 56." *Portalatin v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 125 F. Supp. 3d 810, 813 (N.D. Ill. 2015). As with any summary judgment motion, we consider cross-motions for summary judgment "construing all facts, and drawing all reasonable inferences from those facts, in favor of the non-moving party." *Laskin v. Siegel*, 728 F.3d 731, 734 (7th Cir. 2013) (citing *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008)).

## ANALYSIS

Plaintiffs argue that summary judgment is appropriate because the undisputed facts show Valfilm breached the contract and express and implied warranties, was negligent, and manufactured an unreasonably dangerous product. (Pls.' Mem. of Law in Supp. of Mot. for Summ. J. ("Pls.' SJ Mem.") (Dkt. No. 21–18).) Plaintiffs also argue that the undisputed facts demonstrate they are entitled to $1,765,354 in damages plus attorneys' fees. (*Id.* at 20–21.)

Valfilm argues that Plaintiffs' motion should be denied because there are questions of fact regarding Scholle's performance under the contract and the amount of damages claimed by Plaintiffs. (Def.'s Resp. to Pls.' Mem. of Law in Supp. of Mot. for Summ. J. ("Def.'s Resp.") (Dkt. No. 27) at 6–15.) Valfilm separately moves for summary judgment, arguing that $1,171,781 of Plaintiffs' claimed damages should be dismissed because they are unsubstantiated. (Def.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Def.'s SJ Mem.") (Dkt. No. 22–12) at 1, 9).) We first address Plaintiffs' claims regarding liability and then address the parties competing damages arguments.

## I.    LIABILITY

Plaintiffs argue that the undisputed facts demonstrate Valfilm is liable on all counts. (Pls.' SJ Mem.) Valfilm responds that summary judgment cannot be granted as to liability because questions of fact remain regarding Scholle's performance under the contract and damages.[3] (Def.'s SJ Mem.)

### A.    Breach of Contract (Count I)

Plaintiffs argue that Valfilm breached the contract by corona treating the film without permission and by providing out-of-specification film to Scholle.[4] (Pls.' SJ Mem. at 5–7.)

---

[3] While we address liability and the extent of damages in a bifurcated manner, Valfilm raises several damages related arguments to defeat liability. To the extent they do so, we address them under this section.

[4] Plaintiffs also argue that Valfilm breached the contract by failing to indemnify Scholle for its losses and brings a separate claim for "breach of indemnity" (count VII). (Pls.' SJ Mem. at 4, 8–9.) "Indemnity, in general terms, is an obligation on one party to make good a loss or damage incurred by another." *Marion Hosp. Corp. v. Sterling Emergency Servs. of Illinois, Inc.*, 392 Ill. App. 3d 1113, 1118–19, 913 N.E.2d 140, 145 (1st Dist. 2009), *appeal denied, judgment vacated*, 234 Ill. 2d 524, 917 N.E.2d 522 (Ill. 2009). Because the indemnity provision is part of the same contract for which Plaintiffs have already brought a claim and Plaintiffs' indemnity arguments focus on the extent of damages, we address these arguments in the context of Plaintiffs' damages claim. *See infra* Damages.A.

Valfilm argues that summary judgment cannot be granted as to liability because there are questions of fact regarding Scholle's performance under the contract, the extent of Plaintiffs' claimed damages, whether Valfilm's breach caused all Plaintiffs' claimed damages, and whether Scholle's own negligence caused most of Plaintiffs' damages. (Def.'s Resp. at 6–13.) Plaintiffs respond that Scholle clearly performed its contractual obligations, their damages have been sufficiently proven, and all damages are covered by various contract provisions. (Pls.' Reply to Def.'s Resp. to Pls.' Mot. for Summ. J. ("Pls.' Reply") (Dkt. No. 38) at 2–6.)

"[T]o prevail on a breach of contract claim the plaintiff must show: (1) the existence of a valid and enforceable contract, (2) [the plaintiff] substantially performed the contract, (3) the defendant breached that contract, and (4) damages resulted from the alleged breach of contract." *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 886 (7th Cir. 2018); *accord Carlson v. Rehab. Inst. of Chicago*, 2016 IL App (1st) 143853, ¶ 13, 50 N.E.3d 1250, 1255 (1st Dist. 2016).[5] There is no dispute that there is a valid and enforceable contract and that Valfilm breached by corona treating the film without permission. (Def.'s Resp. to Pls.' Statement of Material Facts ("Def.'s Resp. to Pls.' Facts") (Dkt. No. 29) ¶¶ 10–13, 19–21.) The only disputes are about Scholle's performance and damages.

### 1. Scholle's Performance

Valfilm argues that Scholle was required to test the film it received to make sure it was not corona treated and failed to perform by not undertaking testing. (Def.'s Resp. at 7–8.)

---

[5] The parties do not raise any dispute regarding the applicable law and both cite to Illinois law. "When neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits." *RLI Ins. Co. v. Conseco, Inc.*, 543 F.3d 384, 390 (7th Cir. 2008). Thus, we apply Illinois law.

Plaintiffs respond that Scholle had no obligation to test the film, and even it did, Scholle

performed reasonable testing of the film after it was incorporated into the final product.

(Pls.' Reply at 2–4.)  The parties' arguments center on the meaning of the inspection and

acceptance provision.  That provision states:

> All goods ordered hereunder *shall be subject to* inspection and test by [Scholle] to
> the extent practicable at all times and places, including the place of manufacture
> and in any event prior to acceptance.

(Contract at 3, § 10 (emphasis added).)  Plaintiffs argue the phrase "subject to" is synonymous

with "susceptible to," meaning that testing was optional.  (Pls.' Reply at 4.)  Valfilm argues that

the word "shall" creates a "mandatory" requirement for Scholle to test the film.  (Def.'s

Resp. at 8.)

"In construing a contract, the primary objective is to give effect to the intention of the

parties."  *Right Field Rooftops, LLC v. Chicago Cubs Baseball Club, LLC*, 870 F.3d 682, 689–90

(7th Cir. 2017), *cert. denied*, 138 S. Ct. 2621 (2018).  This is done by "look[ing] to the language

of a contract alone" according to "its plain and ordinary meaning."  *Id.* (quoting

*Gallagher v. Lenart*, 226 Ill. 2d 208, 233, 874 N.E.2d 43, 58 (Ill. 2007)).  We must also construe

the contract "as a whole, viewing each part in light of the others[,]" *Gallagher*, 226 Ill. 2d at 233,

874 N.E.2d at 58, and "seek to give effect to each clause and word used, without rendering any

terms meaningless."  *Selective Ins. Co. of S.C. v. Target Corp.*, 845 F.3d 263, 267

(7th Cir. 2016), *as amended* (Jan. 25, 2017).  If after taking these steps it becomes apparent that

the "language is reasonably or fairly susceptible to multiple meanings" the contract will be

deemed ambiguous.  *Bank of Commerce v. Hoffman*, 829 F.3d 542, 546 (7th Cir. 2016).  If a

contract is ambiguous we may "consider extrinsic evidence to ascertain the parties' intent."

*Gallagher*, 226 Ill. 2d at 233, 874 N.E.2d at 58.  A contract or provision is not ambiguous,

however, "merely because the parties disagree on its meaning." *Cent. Illinois Light Co. v. Home Ins. Co.*, 213 Ill. 2d 141, 153, 821 N.E.2d 206, 214 (Ill. 2004).

We conclude that Scholle was not contractually obligated to test the film it received from Valfilm. The logical and ordinary reading of the words "subject to" as they appear in the provision indicate that testing could be undertaken but was not required. *See, e.g.*, *Estate of Moreland v. Dieter*, 576 F.3d 691, 699 (7th Cir. 2009) ("The ordinary meaning of 'subject to liability' is that a person is '*susceptible to* a lawsuit'" (quoting Black's Law Dictionary 1466 (8th ed. 2004) (emphasis added))); *Titan Tire Corp. of Bryan v. United Steelworkers of Am., Local 890L*, 656 F.3d 368, 374 (6th Cir. 2011) (noting that "'subject to termination' . . . indicates that an employee *might* be discharged . . . but not automatically so"). This reading is consistent with the other clauses within the provision, which create rights for Scholle as the buyer and obligations for Valfilm as the seller. (*See* Contract at 3, § 10 (stating that (1) the "*Seller agrees to* permit access to Seller's premises[;]" (2) the "*Buyer shall have the right* to reject such goods[;]" (3) the "*Seller shall be liable* for the costs of inspection and transportation of nonconforming or rejected goods[;]" and (4) the "*Buyer shall not be liable* to Seller for any damages on account of any failure to accept all of the goods.") (emphasis added).)

Valfilm's interpretation is also problematic because it renders the words "subject to" superfluous. If Valfilm's interpretation is correct, then the words "subject to" could be omitted and the sentence would have essentially the same meaning; it would read "[a]ll goods ordered hereunder shall be [removed phrase] inspect[ed] and test[ed] by Buyer." This interpretation runs afoul of the principle that we should "seek to give effect to each clause and word used." *Selective Ins. Co.*, 845 F.3d at 267. Further, if testing is mandatory, it becomes unclear what it means for Scholle to be required to test the film "in any event prior to acceptance."

(Contract at 3, § 10.)  The more logical reading is that Scholle *could* engage in testing "in any event prior to acceptance."  (*Id.*)

Viewing the inspection provision in conjunction with the whole contract also demonstrates that testing was optional.  Scholle obtained a warranty from Valfilm that the film would be manufactured to specification.  (*Id.* § 9.)  "The whole point of obtaining a warranty is to get a product that will not have to be meticulously combed in a search for defects." *Blommer Chocolate Co. v. Bongards Creameries, Inc.*, 644 F. Supp. 234, 237 (N.D. Ill. 1986); *see also Vasco Trucking, Inc. v. Parkhill Truck Co.*, 6 Ill. App. 3d 572, 576, 286 N.E.2d 383, 386 (Ill. 1972) ("[A warranty] is intended precisely to relieve the promisee of any duty to ascertain the fact for himself." (quotation omitted)).  If testing were mandatory, then Scholle was required to test the goods "at all times and places, including the place of manufacture in any event prior to acceptance" to make sure they met specifications.  (Contract at 3, § 10.)  It would make little sense for Scholle to agree to such methodical testing when Valfilm expressly warranted that specifications would be met.  Thus, the language of the contract, when viewed as a whole, does not support Valfilm's interpretation.

### 2.    Valfilm's Damages Arguments Regarding Liability

Valfilm presents three damages related arguments to defeat liability on Plaintiffs' breach of contract claim.  (Def.'s Resp. at 8–12.)  Valfilm argues that Plaintiffs have failed to "present sufficient evidence to support [their] damages[,]" that there is a question of fact regarding whether Valfilm's breach caused all Plaintiffs' claimed damages, and there is a question of fact whether Scholle's own negligence caused most of Plaintiffs' damages.  (*Id.*)  Plaintiffs do little to respond to each argument and counter that there is sufficient evidence to support their damages and the contract clearly makes Valfilm responsible for them.  (Pls.' Reply at 5–6.)

To establish liability for breach of contract a plaintiff must show that it "did, in fact, suffer some damages." *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 631 (7th Cir. 2007); *In re Ill. Bell Tel. Link-Up II*, 2013 IL App (1st) 113349, ¶ 19, 994 N.E.2d 553, 558 (1st Dist. 2013). For a plaintiff to recover all its claimed damages, it must also show that they were caused by the defendant's breach. *In re: Emerald Casino, Inc.*, 867 F.3d 743, 755 (7th Cir. 2017); *Gold v. Ziff Commc'ns Co.*, 322 Ill. App. 3d 32, 49, 748 N.E.2d 198, 211 (1st Dist. 2001). Damages not proximately caused by the defendant's breach are generally not allowed. *In re Ill. Bell Tel. Link-Up II*, 2013 IL App (1st) 113349, ¶ 19, 994 N.E.2d at 558. Thus, a defendant may defeat liability for a breach of contract claim by showing that *none* of the plaintiff's damages were caused by its breach. *See In re Ill. Bell Tel. Link-Up II*, 113349, ¶ 29, 994 N.E.2d at 560 (upholding dismissal where plaintiffs did not "show [any] damages proximately caused by the breach"); *Kopley Grp. V., L.P. v. Sheridan Edgewater Properties, Ltd.*, 376 Ill. App. 3d 1006, 1014–15, 876 N.E.2d 218, 226 (1st Dist. 2007) (same). However, liability is established once a plaintiff shows that *some* damages were caused by the defendant's breach. *See BankFirst v. Mortg. Direct*, No. 07 C 3592, 2008 WL 4279980, at *4 (N.D. Ill. Sept. 17, 2008) (liability where undisputed evidence showed that Plaintiff suffered "some damages as a result of [defendant's] breach"); *UMB Bank, Nat'l Ass'n v. Leafs Hockey Club, Inc.*, No. 13 C 2247, 2015 WL 920919, at *4 (N.D. Ill. Mar. 2, 2015) (liability where there was "uncontested evidence . . . that there [were] money damages resulting from [defendant's] breach.").

Plaintiffs have satisfied the damages element of their claim because the undisputed facts demonstrate some damages caused by Valfilm's breach. Valfilm breached by corona treating the film it produced for Scholle. (Pls.' Facts ¶¶ 12–13, 16–22.) Testing revealed that the bags Scholle manufactured with Valfilm's film leaked because of the corona treatment. (*Id.* ¶¶ 39–42;

Lab Report at 3–4.)  This conclusion was based on laboratory testing of seals made with both corona and non-corona treated film.  (Lab Report at 3–4; Bellmore Dep. at 22.)  The tests revealed that seals made with corona treated film were significantly weaker than those made without treated film.  (Lab Report at 3–4.)  Valfilm has not contested Scholle's testing, its conclusion that the corona treatment caused the leaking, or proffered an alternative explanation for the leaking bags.  (*See* Def.'s Resp; Resp. to Pls.' Facts.)  After Scholle learned that the bags were leaking, the remaining film that had not yet been used to manufacture bags was rendered useless and Scholle suffered damages by, at a minimum, not being able to use this remaining film and having to obtain more.  (*See* Pls.' Damages Report at 17–18 (explaining that 1,652 pounds of remaining film was discarded); Chenevey Dep. at 11–12 (agreeing that Scholle suffered $210,965 in damages for unused film).)  This is all that is needed to satisfy the damages element and establish liability.  *See BankFirst*, 2008 WL 4279980, at *4; *UMB Bank, Nat'l Ass'n*, 2015 WL 920919, at *4.

All Valfilm's damages arguments are unavailing as to liability because they only contest the amount of damages.  Such arguments are regularly rejected when presented to defeat summary judgment.  *See, e.g.*, *UMB Bank, Nat'l Ass'n*, 2015 WL 920919, at *4 (granting summary judgment on breach of contract claim where defendant's arguments did "not go to its liability, but to the exact amount of damages attendant to its breach"); *BankFirst*, 2008 WL 4279980, at *2, *4 (same); *Manufacturers Life Ins. Co. (U.S.A.) v. Mascon Info. Techs. Ltd.*, 270 F. Supp. 2d 1009, 1013 (N.D. Ill. 2003) (granting summary judgment with respect to liability where "there [was] no dispute that [plaintiff] was injured by the breach").  Thus, we grant Plaintiffs' motion for summary judgment on their breach of contract claim as to liability.

**B.       Breach of Express Warranty (Count IV)**

We turn next to Plaintiffs' breach of express warranty claim.  Plaintiffs argue that summary judgment should be granted because the undisputed facts show that Valfilm warranted the film would meet specifications and breached by corona treating the film. (Pls.' SJ Mem. at 10–12.)  Valfilm's only argument in response is that Plaintiffs have failed to establish "a large portion of their alleged damages to a reasonable degree of certainty." (Def.'s Resp. at 13.)

To succeed on an express warranty claim "a plaintiff must show a breach of an affirmation of fact or promise that was made a part of the basis of the bargain." *Caterpillar, Inc. v. Usinor Industeel*, 393 F. Supp. 2d 659, 677 (N.D. Ill. 2005) (citing 810 ILCS 5/2–313; *Hasek v. DaimlerChrysler Corp.*, 319 Ill. App. 3d 780, 745 N.E.2d 627 (1st Dist. 2001)).  A plaintiff must also show damages.  *Shoop v. DaimlerChrysler Corp.*, 371 Ill. App. 3d 1058, 1061, 864 N.E.2d 785, 788 (1st Dist. 2007); *accord Valenti v. Mitsubishi Motor Sales of Am., Inc.*, 332 Ill. App. 3d 969, 973, 773 N.E.2d 1199, 1203 (1st Dist. 2002).

Plaintiffs have met their burden regarding their breach of express warranty claim. Valfilm admits that the contract contains a warranty provision that includes a promise that the film "will be in full conformity with . . . specifications."  (Def.'s Resp. to Pls.' Facts ¶¶ 11, 16; Def.'s Answer to Req.'s ¶ 3; Contract at 3, § 9.)  Valfilm also admits that the specifications were part of the basis of the bargain and that the film did not conform with specifications because it was corona treated.  (Def.'s Resp. to Pls.' Facts ¶¶ 19–22, 34; Answer ¶ 51.)   The undisputed facts also show that Scholle suffered some damages as a result of the corona treated film.  *Supra* Part.I.A.2.  Thus, we grant Plaintiffs' motion for summary judgment on their breach of express warranty claim as to liability.

**C.      Breach of Implied Warranty of Merchantability (Count V)**

Plaintiffs also bring a claim for breach of the implied warranty of merchantability.

(Pls.' SJ Mem. at 12–14.)  Plaintiffs argue that Valfilm breached this implied warranty because

the film was not fit for its ordinary and intended purpose.  (*Id.* at 13–14.)  Like the express

warranty claim, Valfilm's only argument in response is that Plaintiffs have failed to establish all

their alleged damages.  (Def.'s Resp. at 13.)  Despite Valfilm's lack of argument, we must still

be satisfied that Plaintiffs have met their burden.  *Johnson v. Gudmundsson*, 35 F.3d 1104, 1112

(7th Cir. 1994) ("Even if the opposing party completely fails to respond to a summary judgment

motion, Rule 56(e) permits judgment for the moving party only '*if appropriate*—that is, if the

motion demonstrates that there is no genuine issue of material fact *and* that the movant is entitled

to judgment as a matter of law.'" (quoting *Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 332

(7th Cir. 1993), *as amended on denial of reh'g* (Feb. 22, 1993)).

"To succeed on a claim of breach of implied warranty of merchantability, a plaintiff must

allege and prove: (1) a sale of goods (2) by a merchant of those goods, and (3) the goods were

not of merchantable quality."  *Brandt v. Bos. Sci. Corp.*, 204 Ill. 2d 640, 645,

792 N.E.2d 296, 299 (Ill. 2003).  "Goods are not of 'merchantable quality' if they are 'unfit for

their intended purpose,'" *Walker v. Macys Merch. Grp., Inc.*, 288 F. Supp. 3d 840, 868

(N.D. Ill. 2017) (quoting *Maldonado v. Creative Woodworking Concepts, Inc.*,

342 Ill. App. 3d 1028, 1034, 796 N.E.2d 662, 666 (3rd Dist. 2003)), or if they fail to "conform to

. . . promises or affirmations of fact made on the container or label."  810 ILCS 5/2-314(2)(f);

*see also In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*,

348 F. Supp. 3d 797, 815 (N.D. Ill. 2018) (applying Illinois and other states' law).

Plaintiffs have met their burden regarding their breach of implied warranty claim.

Valfilm admits that it was a merchant of the type of film it sold to Scholle.  (Def.'s Resp. to Pls.'

Facts ¶ 3; Answer ¶ 3.)  The undisputed facts also demonstrate that the film was not of merchantable quality because it was unfit for its intended purpose and did not conform to the affirmations of fact on the label.  The film was intended to be used as the inner ply component of bags used to hold soft drink syrup.  (Pls.' Facts ¶¶ 8–10.)  Valfilm expressly warranted that it was aware its film would be used for this purpose and the specifications it received indicated the same.  (*See* Contract at 3, § 9 ("[Valfilm] hereby warrants that [product] . . . will be fit and suitable for the purposes intended, which [Valfilm] warrants having knowledge of."); Specs. at 6 (stating that the film must comply with FDA regulations governing copolymers used to package and store food[6], and that Valfilm could, under certain circumstances, be responsible for reimbursing Scholle for "empty and filled bags made with . . . out-of[-]specification film").)  Scholle's testing revealed that the film was not fit for its intended purpose because seals made with corona treated film are significantly weaker than seals made with non-corona treated film and eventually lead to leaking.[7]  (Lab Report at 3–4.)  The labels on the film Valfilm produced also falsely stated that the film was not treated.  (Pls.' Facts ¶¶ 25–26.)  Because the film was indisputably not of merchantable quality, we grant summary judgment on Plaintiffs' breach of implied warranty of merchantability claim as to liability.

### D. Breach of Warranty of Fitness for a Particular Purpose (Count VI)

Plaintiffs' final warranty claim is for breach of the implied warranty of fitness for a particular purpose.  (Pls.' SJ Mem. at 14–15.)  Plaintiffs argue that Valfilm breached this warranty by producing film that was not fit for the purpose of being incorporated into bags that could hold liquid.  (*Id.* at 15.)  Valfilm argues that summary judgment should be denied because

---

[6] *See* 21 CFR 177.1520(c), 3.2a (outlining requirements for copolymers used to package food).

[7] As noted, Valfilm has not contested Scholle's testing or conclusions or offered any alternative explanation for the leaking bags.  (*See* Def.'s Resp; Resp. to Pls.' Facts.)

Plaintiffs have failed to show that Scholle relied on Valfilm's skills or judgment to select the film it purchased. (Def.'s Resp. at 13–14.)

To prove breach of an implied warranty of fitness for a particular purpose, a plaintiff must show, among other things, "that plaintiff, as buyer of the goods, was relying upon seller's skills or judgment to select suitable goods." *S. Side Tr. & Sav. Bank of Peoria v. Mitsubishi Heavy Indus.*, Ltd., 401 Ill. App. 3d 424, 436–37, 927 N.E.2d 179, 191 (1st Dist. 2010) (quoting *Maldonado*, 342 Ill. App. 3d at 1034, 796 N.E.2d at 666); *see also Siemen v. Alden*, 34 Ill. App. 3d 961, 965, 341 N.E.2d 713, 716 (2nd Dist. 1975) (no breach where "uncontroverted facts establish[ed] that plaintiff had decided to purchase [the product] prior to his initial contact with defendant").

Plaintiffs have failed to present facts demonstrating that Scholle relied on Valfilm's skill or judgment to select the film it ultimately purchased. In fact, the record suggests just the opposite. David Bellmore, Scholle's Director of Technology, testified that Scholle often made its own film for the construction of bags and only used Valfilm because it "needed more film than [it] could produce." (Bellmore Dep. at 4–5.) He also testified that the material specifications Valfilm used came from Scholle. (*Id.* at 7, 11.) These facts suggest that Valfilm played no role in helping Scholle select the type of film it purchased or that Scholle relied on Valfilm's expertise. Thus, Plaintiffs' motion for summary judgment for breach of warranty of fitness for a particular purpose is denied and this claim is dismissed.

### E. Negligence and Strict Liability (Counts II and III)

Plaintiffs' final claims are for negligence and strict liability. (Pls.' SJ Mem. at 15–20.) Plaintiffs argue that Valfilm negligently produced the film it sold to Scholl by not producing the film to specifications. (*Id.* at 16–17.) It also argues that it produced an unreasonably dangerous product because it led to the manufacture of leaking bags. (*Id.* at 18–19.) Valfilm offers little

argument in response to Plaintiffs' tort claims and only argues that "at a minimum there is a question of fact with respect to the proximate cause of the majority of the damages claimed by Plaintiffs."  (Def.'s Resp. at 14.)

To prove negligence a plaintiff must show a "duty owed by the defendant to the plaintiff."  *Sperl v. Henry*, 2018 IL 123132, ¶ 36 (Ill. 2018.)  "In the absence of a showing from which the court could infer the existence of a duty, no recovery by the plaintiff is possible as a matter of law." *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 13, 21 N.E.3d 684, 689 (Ill. 2014) (quoting *Vesey v. Chi. Hous. Auth.*, 145 Ill.2d 404, 411, 583 N.E.2d 538, 542 (Ill. 1991)).  To succeed on a claim for strict liability, a plaintiff must show that the product was unreasonably dangerous due to a manufacturing or design defect.  *Pommier v. Jungheinrich Lift Truck Corp.*, 2018 IL App (3d) 170116, ¶ 23, 102 N.E.3d 684, 689 (3rd Dist. 2018), *reh'g denied* (Mar. 23, 2018).

Plaintiffs argue that the only duty breached by Valfilm was the duty to "manufacture the [film] according to specifications and in a manner consistent with the representations it made to Scholle."  (Pls.' SJ Mem. at 16.)  While manufactures have a general duty to produce products that are reasonably safe for consumers, *Hansen v. Baxter Healthcare Corp.*, 198 Ill. 2d 420, 433, 764 N.E.2d 35, 43 (Ill. 2002), there is no corresponding tort duty to produce products according to contract specifications.  *Valfer v. Evanston Nw. Healthcare*, 2016 IL 119220, ¶ 27, 52 N.E.3d 319, 327 (Ill. 2016) ("breach of contract is not considered a tort"); *accord Johnson v. George J. Ball, Inc.*, 248 Ill. App. 3d 859, 867, 617 N.E.2d 1355, 1361 (2nd Dist. 1993) ("Generally, a party may not recover in tort for what is essentially a breach of contract.")

Plaintiffs' argument reveals a fundamental problem with both tort claims: they are barred by the economic loss rule.  The economic loss rule "bars recovery in tort for purely economic

losses arising out of a failure to perform contractual obligations." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012) (citing *Moorman Manufacturing Co. v. Nat'l Tank Co.,* 91 Ill.2d 69, 61 Ill. Dec. 746, 435 N.E.2d 443, 448–49 (Ill. 1982)). "[T]he principle point of the economic loss rule" is to "preserv[e] the distinction between tort and contract law." *Sienna Court Condo. Ass'n v. Champion Aluminum Corp.*, 2018 IL 122022, ¶ 24 (Ill. 2018). It applies to bar tort claims for "plaintiffs who have incurred physical damage to their property if the damage is caused by disappointed commercial expectations, gradual deterioration, internal breakage, or other nonaccidental causes, rather than a dangerous event." *In re Chi. Flood Litig.*, 176 Ill. 2d 179, 200–01, 680 N.E.2d 265, 275 (Ill. 1997). The economic loss rule "also bars tort recovery for any type of damage that one would reasonably expect as a direct consequence of, or incidental to, the failure of the defective product." *Westfield Ins. Co. v. Birkey's Farm Store, Inc.*, 399 Ill. App. 3d 219, 232, 924 N.E.2d 1231, 1243 (3rd Dist. 2010) (citing *Trans States Airlines v. Pratt & Whitney Canada, Inc.*, 177 Ill. 2d 21, 51, 682 N.E.2d 45, 58 (Ill. 1997)). In short, recovery in tort requires a plaintiff to "show harm above and beyond a party's contractual or commercial expectations." *Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 926 (7th Cir. 2003), *as amended on denial of reh'g* (Apr. 3, 2003).

Plaintiffs' entire case rests on disappointed commercial expectations. Scholle contracted to purchase film that was supposed to meet certain specifications. (Contract at 3; Specs.) The contract also required the film to be "fit and suitable for the purposes intended . . . merchantable[,] and free of any and all defects." (Contract at 3, § 9.) The film ultimately did not meet Scholle's required specifications and that failure rendered the film unsuitable for its intended purpose, causing damage. (*See* Lab Report; Pls.' Facts ¶¶ 37, 39–42.) The damage ultimately caused by the defective film, leaking bags that harmed product packaging and required cleanup up and disposal, is the exact type of damage one would reasonably expect from

film incorporated into bags manufactured to hold soft drink syrup. This expectation alone is sufficient to conclude that the economic loss rule applies. *See, e.g.*, *Trans States Airlines*, 177 Ill. 2d at 50–51, 682 N.E.2d at 58 (economic loss rule applied where a defective airplane engine damaged the plane airframe); *TreeHouse Foods, Inc. v. SunOpta Grains & Foods Inc.*, No. 18 C 1412, 2019 WL 1429337, at *11 (N.D. Ill. Mar. 29, 2019) (rule applied where "the logical and expected result of receiving contaminated sunflower kernels . . . was that finished products, equipment, and raw materials would also become contaminated"); *Westfield*, 399 Ill. App. 3d at 233, 924 N.E.2d at 1244 (rule applied where "a fire extinguisher and some equipment" were the "exact types of property one would expect to be damaged as a direct or incidental consequence of the tractor fire"). Thus, we conclude that Plaintiffs' negligence and strict liability claims are barred by the economic loss rule and deny Plaintiffs' motion for summary judgment as to these claims.

## II. DAMAGES

Having established liability on Plaintiffs' breach of contract and breach of express and implied warranties claims, we turn next to the question of damages. Plaintiffs assert they are entitled to at least $1,765,354 in damages plus attorneys' fees. (Pls.' SJ Mem. at 20–21.) This number is comprised of the money Scholle paid to Coke, $1,511,522, and $252,183[8] in direct damages claimed by Scholle. (*Id.*) Plaintiffs argue that Valfilm is responsible for the full amount because it agreed to indemnify Scholle for all losses arising out of Valfilm's performance under the contract. (*Id.*; Pls.' Reply at 5–6.) Plaintiffs also argue that their claimed damages are covered by the damages clause within the warranty provision, which requires Valfilm to cover all losses and expenses. (Pls.' SJ Mem. at 20–21; Pls.' Reply at 5.) Plaintiffs

---

[8] It is unclear why exactly Plaintiffs claim they suffered $1,765,354 in damages rather than $1,763,705. We observe that $1,511,522 + $252,183 = $1,763,705.

argue further that Valfilm must cover $252,183 of Scholle's direct damages claim because Valfilm's own forensic accountant concluded that this amount was supported. (Pls.' SJ Mem. at 20.) Valfilm responds that the indemnity provision is inapplicable because it does not cover damages caused by Scholle's own negligence. (Def.'s Resp. at 12–13.) Valfilm also argues that there are questions of fact regarding whether its breach caused all Plaintiffs' claimed damages. (*Id.* at 11–12.) Finally, Valfilm argues that $1,171,781 of Plaintiffs' claimed damages are unsubstantiated and asks that we dismiss these damages. (Def.'s SJ Mem. at 1, 5–8.)

### A. Indemnity

Plaintiffs argue that Valfilm is responsible for all its claimed damages pursuant to the indemnity provision. (Pls.' SJ Mem. at 8–9, 20–21; Pls. Reply at 5–6; *see also* Contract at 3, § 12.) The indemnity provision states:

> [Valfilm] agrees to indemnify and hold harmless [Scholle] *from and against all losses, liabilities, claims or demands*, including attorneys' fees and costs, *for injuries to any person (including death) or damage to property, directly or indirectly arising out of Seller's performance hereunder*, or its acts or omissions, regardless of when such losses occur and regardless of whether such articles or services have been accepted.

(Contract at 3, § 12 (emphasis added).) Plaintiffs argue that this provision clearly covers their claimed damages because they "arise out of [Valfilm's] performance." (Pls.' SJ Mem. at 8–9, 20–21; Pls. Reply at 5–6; Contract at 3, § 12.) Valfilm argues that the indemnity provision does not cover Plaintiffs' claimed damages because it does not require Valfilm to indemnify Scholle for its own negligence. (Def.'s Resp. at 12–13; Def.'s Reply to Pls.' Response to Def.'s Mot. for Summ. J. ("Def.'s Reply") (Dkt. No. 37) at 5–7.) Plaintiffs respond that there is no evidence indicating that Scholle breached any standards of care. (Pls.' Reply at 4–5.)

Indemnity agreements are subject to the rules of traditional contract interpretation. *Va. Sur. Co. v. N. Ins. Co. of New York*, 224 Ill. 2d 550, 556, 866 N.E.2d 149, 153 (Ill. 2007).

However, they are "strictly construed [with] any ambiguity . . . construed most strongly against the indemnitee." *Kmart Corp. v. Footstar, Inc.*, 777 F.3d 923, 928 (7th Cir. 2015) (quotation omitted); *Pekin Ins. Co. v. Designed Equip. Acquisition Corp.*, 2016 IL App (1st) 151689, ¶ 25, 63 N.E.3d 242, 252 (1st Dist. 2016). "An indemnity contract will not be construed as indemnifying one against his own negligence, unless such a construction is required by clear and explicit language of the contract or such intention is expressed in unequivocal terms." *Buenz v. Frontline Transp. Co.*, 227 Ill. 2d 302, 309, 882 N.E.2d 525, 529 (Ill. 2008) (quotation omitted).

We conclude that the indemnity provision does not cover all Plaintiffs' claimed damages by its plain language. The provision refers only to losses for personal injury or property damage. (Contract at 3, § 12 (stating that the provision covers "losses, liabilities, claims or demands . . . for injuries to any person . . . or damage to property").) However, Plaintiffs are claiming damages for a multitude of economic losses in addition to property damage including damages for "incremental transport expenses," labor, disposal expenses, and Coke's additional production time, labor, and transportation expenses. (*See* Damages Summary (Dkt. No. 36–5) at 2.) Given that we must strictly construe the indemnity provision, *Kmart Corp.*, 777 F.3d at 928, we cannot conclude that the explicit reference to personal injury and property damage also includes the host of economic damages that Plaintiffs are claiming. Thus, the indemnity provision does not cover all Plaintiffs' claimed damages. While this provision does cover all property damage caused by Valfilm's breach, as explained more fully below, questions of fact remain regarding whether Valfilm's breach caused these claimed damages preventing us from granting summary judgment.

## B.    Express Warranty Damages Provision

Plaintiffs also rely on the damages provision within the express warranty clause to argue that Valfilm is responsible for all its claimed damages.  (Pls.' SJ Mem. at 20–21; Pls.' Reply at 5.)  The damages provision states:

> [Valfilm] agrees to save and keep *[Scholle] and its customers free and harmless from any loss, damage, injury, or expense whatsoever in connection with this Purchase Order* including, without limitation, all claims, whether in warranty, negligence, product liability or otherwise, consequential and incidental damages and attorneys' fees.

(Contract at 3, § 9 (emphasis added).)  Plaintiffs argue that this provision covers the money it paid to Coke because that payment qualified as an "expense."  (Pls.' SJ Mem. at 20–21.)  It also argues that the provision covers $252,183 of Scholle's direct damages because Valfilm's own forensic accountant testified that this amount was supported.  (*Id.* at 20.)  Valfilm responds that this provision is not dispositive because Plaintiffs have failed to prove all their damages were caused by Valfilm's breach.  (Def.'s Resp. at 11–12.)

Under basic contract theory, a "defendant who has breached a contract is liable only for the damages that the breach caused."  *In re: Emerald Casino, Inc.*, 867 F.3d at 755; *see also In re Ill. Bell Tel. Link-Up II*, 2013 IL App (1st) 113349, ¶ 19, 994 N.E.2d at 558 ("Damages which are not the proximate cause of the breach are not allowed."); *Gold*, 322 Ill. App. 3d at 49, 748 N.E.2d at 211 ("[P]laintiff must demonstrate that defendant's breach caused plaintiff's damages.")  One aspect of causation is cause in fact, where a court must ask "whether 'there is a reasonable certainty that a defendant's acts caused the injury or damage.'"  *In re: Emerald Casino, Inc.*, 867 F.3d at 755 (quoting *Young v. Bryco Arms*, 213 Ill. 2d 433, 444, 821 N.E.2d 1078, 1085 (Ill. 2004)).  In other words, it must be that the "damages would not have occurred had the defendant not breached the contract[,]" which is generally a question of fact.  *In re: Emerald Casino, Inc.*, 867 F.3d at 755.

Despite the breadth of the damages provision, we decline to grant Plaintiffs' summary judgement motion regarding all their claimed damages because questions of fact remain regarding whether Valfilm's breach caused all the damages alleged. Plaintiffs' own expert, Mohn, opined that neither all of Coke's nor all of Scholle's claimed damages are supported. (Pls.' Damages Report at 13, 29.) She concluded that only $1,245,653 of Plaintiffs' damages are supported. (*Id.*) Mohn testified that when evaluating Plaintiffs' damages, her goal was to determine if the claimed losses were incremental, meaning "over and above" Coke's or Scholle's normal expenses such that they could be attributed to the leaking bags. (Mohn Dep. at 5–6.) Mohn concluded that a substantial portion of Coke's and Scholle's alleged losses were not incrementally supported. (*See* Pls.' Damages Report.) If Plaintiff's own expert cannot substantiate all Plaintiffs' claimed damages, we cannot find that they were all caused by Valfilm's breach. Thus, we conclude that the question of the extent of damages caused by Valfilm's breach is best left to a trier of fact, *see In re: Emerald Casino, Inc.*, 867 F.3d at 755, and deny Plaintiffs' summary judgment motion with respect to all their claimed damages and attorneys' fees.[9]

### C.    Whether Any of Plaintiffs' Claimed Damages Should be Dismissed

Valfilm asks that we grant summary judgment with respect to $1,171,781 of Plaintiffs' claimed damages. (Def.'s SJ Mem. at 1, 6–8.) This amount is distilled from the damages claimed by Coke and reimbursed by Scholle. (*Id.* at 1.) First, Valfilm argues that $667,948 of

---

[9] Plaintiffs also argue that the damages provision contained within the film specifications covers all their claimed damages. (Pls.' SJ Mem at 20–21; Pls.' Reply at 6; *see also* Specs. at 6.) The provision states that if Valfilm changes the specifications it must reimburse Scholle for "100% of the . . . out of specification film, . . . 100% of all empty and filled bags made with . . . out of specification film, and 100% of all other quality issue expenses." (Specs at 6.) We reject this argument for the same reasons that we cannot conclude, at this juncture, that the express warranty damages provision covers all Plaintiffs' claimed damages.

Coke's claimed damages for finished product destroyed should be dismissed because, although Mohn concluded that most of these damages were supported,[10] she relied on insufficient evidence to come to her conclusion. (*Id.* at 7–8.) Second, Valfilm argues that $503,833 of Coke's claimed damages reimbursed by Scholle should be dismissed because Mohn concluded that these damages were not supported. (*Id*. at 1, 6–7.) Plaintiffs respond that Mohn relied on multiple pieces of evidence to substantiate damages that, at a minimum, allow the issue to proceed to trial. (Pls.' Resp. to Def.'s Mem. of Law in Support of Mot. for Summ. J. ("Pls.' Resp.") (Dkt. No. 35) at 8–9.)

### 1.      Finished Product Destroyed

Valfilm argues that $667,948 of the damages claimed by Coke and reimbursed by Scholle for finished product destroyed must be dismissed because the evidence Mohn relied on to substantiate most of these damages was insufficient. (Def.'s SJ Mem. at 1, 7–8.) The finished product destroyed damages were based, in part, on the BOM from Coke that purports to outline the cost of each component of a bag-in-box. (Pls.' Damages Report at 22–23; BOM at 94.) Valfilm argues that Mohn should not have relied on the BOM because she did not verify the accuracy of any of the component costs. (Def.'s SJ Mem. at 3–4, 7–8.) Plaintiffs respond that Mohn relied on other competent evidence to determine the cost of the finished product destroyed, such as invoices demonstrating the cost of each bag and other documents that show how many bag-in-boxes were destroyed. (Pls.' Resp. at 9.)

"In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine

---

[10] Mohn concluded that $664,856 of Coke's claimed finished product destroyed damages were supported. (Pls.' Damages Report at 13.)

whether there is a genuine issue of triable fact." *Outlaw v. Newkirk*, 259 F.3d 833, 836–37 (7th Cir. 2001). The reliability of an expert's opinion "is primarily a question of the validity of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced." *Manpower, Inc. v. Ins. Co. of Penn.*, 732 F.3d 796, 806 (7th Cir. 2013). "The district court usurps the role of the jury . . . if it unduly scrutinizes the quality of the expert's data and conclusions rather than the reliability of the methodology the expert employed." *Id.* "The factual underpinnings of expert testimony" are generally best attacked on cross-examination. *Walker v. Soo Line R. Co.*, 208 F.3d 581, 586–87 (7th Cir. 2000) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596, 113 S. Ct. 2786, 2798 (1993))); *see also In re Sulfuric Acid Antitrust Litig.*, 743 F. Supp. 2d 827, 866 (N.D. Ill. 2010) ("[T]he arguable inaccuracy of Plaintiffs' damages calculations is not grounds for granting summary judgment. The credibility and persuasiveness of Plaintiffs' expert witnesses are issues best left to a factfinder.").

We conclude that the question of Coke's finished product destroyed damages must be left to a factfinder. This is not a case where Plaintiffs have failed to present any evidence regarding the damages for finished product destroyed. For example, Plaintiffs have presented a breakdown from Coke of the cost of each bag-in-box (*see* BOM at 94), Scholle provided product invoices demonstrating that each bag costs approximately 69 cents (Dkt. No. 36–9), and both experts agree that there exists sufficient documentation regarding the number of bag-in-boxes destroyed. (Chenevey Dep. at 16; Pls.' Damages Report at 22.) Valfilm's argument is best characterized as an attack focused on the weight of the evidence relied on by Mohn, which is a question best left to a factfinder. *Outlaw*, 259 F.3d at 836–37. Thus, we deny Valfilm's motion for summary judgment with respect to the finished product destroyed damages claimed by Coke and reimbursed by Scholle.

## 2.    Unsubstantiated Damages

Valfilm also argues that $503,833 of the damages claimed by Coke and reimbursed by Scholl should be dismissed because Mohn concluded that this amount was unsupported. (Def.'s SJ Mem at 7.)  Plaintiffs respond that their interrogatory responses demonstrate that there are numerous documents and witnesses supporting these damages. (Pls.' Resp. at 11–12.)

A "nonmoving party must identify with reasonable particularity the evidence upon which she relies in order to stave off summary judgment." *Marting v. Crawford & Co.*, 203 F. Supp. 2d 958, 963 (N.D. Ill. 2002) (citing *Brasic v. Heinemann's, Inc.,* 121 F.3d 281, 285 (7th Cir.1997)). Summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quoting *Schacht v. Wis. Dep.'t Of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)).  Further, it is "not [the court's] function to scour the record in search of evidence to defeat a motion for summary judgment." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996); *see also Bublich v. Mead Corp.*, 287 F. Supp. 2d 864, 867 (N.D. Ill. 2003) (plaintiff failed to present adequate evidence where pages cited in a deposition did not support assertion in statement of undisputed facts).

Plaintiffs' interrogatory answers do not create a question of fact regarding the $503,833 in damages that its own expert concluded are unsupported.  An examination of Plaintiffs' referenced interrogatory answers only show that Plaintiffs believe evidence exists that could substantiate its damages.  For example, in response to Valfilm's request that Plaintiffs identify and itemize each element of damages, it references three documents by Bates number. (Dkt. No. 36–2 at 4–5.)  In response to Valfilm's request that Plaintiffs identify the documents used to verify Coke's damages, Plaintiffs again only cite three documents by Bates number.

(*Id.* at 5.) Plaintiffs undertake no effort to explain what these documents are or how they in any way substantiate the $503,833 in claimed damages. While Plaintiffs have identified witnesses that they believe could help substantiate their damages (*id.*) they have not presented affidavits or deposition testimony from these witnesses. Plaintiffs' mere reference to documents and witnesses fails to create an issue of fact. *See Hammel*, 407 F.3d at 859; *Bublich*, 287 F. Supp. 2d at 867. Thus, we grant Valfilm's motion with respect to $503,833 of the damages claimed by Coke and reimbursed by Scholle.

## CONCLUSION

Plaintiffs' motion for summary judgment is granted as to liability for counts I, IV, and V and denied in all other respects. Valfilm's motion is granted with respect to $503,833 of Plaintiffs' claimed damages, which are hereby stricken. Valfilm's motion is denied in all other respects. It is so ordered.

_____
Honorable Marvin E. Aspen
United States District Judge


Dated: August 5, 2019
      Chicago, Illinois